# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
### CENTRAL DIVISION

JAMES DYE,                                    )
                                              )
       Plaintiff,                             )
                                              )
v.                                            )          Case No. 2:15-cv-04021-MDH
                                              )
BRIAN KINKADE, et al.,                        )
                                              )
       Defendants.                            )

## ORDER

Before the Court is Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 29). Defendants argue each claim in Plaintiff's Amended Complaint is subject to dismissal because the court lacks jurisdiction to hear, or should abstain from hearing, the claim or because the allegations within Plaintiff's Amended Complaint fail to state a claim upon which relief can be granted. Upon careful review and consideration, the Court hereby **GRANTS IN PART AND DENIES IN PART** Defendants' motion.

## I. BACKGROUND

Plaintiff is a licensed dentist practicing in the State of Missouri who initiated this lawsuit against certain individuals employed by the Missouri Department of Social Services acting in their official and individual capacities. Plaintiff alleges Defendants violated federal and state law by promulgating and following an "unauthorized" dental manual that allegedly disallows coverage and reimbursement for denture-related services for certain adult Medicaid recipients. Plaintiff alleges further that Defendants retaliated against Plaintiff for speaking out against the allegedly unlawful reimbursement policies and procedures. The allegations and claims asserted in Plaintiff's Amended Complaint are more fully outlined below.

## A. Relevant Medicaid Background

The Supreme Court describes Medicaid as "a joint state-federal funding program for medical assistance in which the Federal Government approves a state plan for the funding of medical services for the needy and then subsidizes a significant portion of the financial obligations the State has agreed to assume." *Alexander v. Choate*, 469 U.S. 287, 290 n. 1, 105 S. Ct. 712, 714, 83 L. Ed. 2d 661 (1985). Although a state's participation in the Medicaid program is voluntary, once the state chooses to participate, it must comply with all federal statutory and regulatory requirements. *See id.* The federal government will subsidize medical-assistance services for a state only after the state has submitted a "plan" to the Secretary of the Department of Health and Human Services that meets the requirements of 42 U.S.C. 1396a(a) and the Secretary approves the plan. *Lankford v. Sherman*, 451 F.3d 496, 504 (8th Cir. 2006). A state's plan *must* provide certain categories of medical services and *may* provide optional categories of medical services. *See* 42 U.S.C. § 1396a(a)(10)(A). If the state chooses to provide an optional medical service, then it must comply with all federal statutory and regulatory mandates related to that service. *Lankford*, 451 F.3d at 504.

Dental services are considered an optional medical service under the Medicaid Act. *See* 42 U.S.C. § 1396a(a)(10)(A), 1396d(a)(10). Missouri has elected to provide dental services to "eligible needy persons" under its approved plan, so long as the dental services are "prescribed" and "medically necessary[.]" Mo. Rev. Stat. § 208.152.1. Missouri's approved plan states that such services are "subject to appropriations." *Id.* Missouri regulation further describes the scope of dental services covered under the plan:

> (1) Administration. The MO HealthNet dental program shall be administered by the MO HealthNet Division, Department of Social Services. The dental services covered and not covered, the limitations under which services are covered, and the maximum allowable fees for all covered services shall be determined by the

MO HealthNet Division and shall be included in the MO HealthNet *Dental Provider Manual*, which is incorpo by reference and made part of this rule as published by the Department of Social Services, MO HealthNet Division, 615 Hower-ton Court, Jefferson City, MO 65109, at its website at www.dss.mo.gov/mhd, November 1, 2011. This rule does not incorporate any subsequent amendments or additions. Dental services covered by the MO HealthNet program shall include only those which are clearly shown to be medically necessary. The division reserves the right to effect changes in services, limitations, and fees with proper notification to MO HealthNet dental providers.

. . .

(3) Participant Eligibility. . . . (C) For all other eligibility categories of MO HealthNet assistance [other than children, persons receiving HealthNet under a category of assistance for pregnant women or the blind, or participants living in nursing facilities] dental services will only be reimbursed if the dental care is related to trauma of the mouth, jaw, teeth, or other contiguous sites as a result of injury or as related to a medical condition when a written referral from the participant's physician states the absence of dental treatment would adversely affect the stated pre-existing medical condition.

      1. Reimbursement for dental care shall be limited to those procedure codes identified in section (19) of the MO HealthNet Dental Provider Manual which may be referenced at www.dss.mo.gov/mhd; and

      2. Participants must have a written referral from their physician stating the absence of dental treatment would adversely affect the stated pre-existing medical condition. This referral must be maintained in the patient's record and made available to the MO HealthNet Division or its agent upon request.

13 C.S.R. § 70-35.010.

The Dental Provider Manual (hereinafter "dental manual") published in November of 2011 and incorporated by reference into the above regulation reiterates that dental services for adults – except participants under a category of assistance for pregnant women, the blind, or vendor nursing facility residents – are covered only where the dental care is related to traumatic injury of the jaw, mouth, teeth, or other contiguous site above the neck or where the participant provides a written referral from the participant's physician stating that the absence of dental treatment would adversely affect a pre-existing medical condition. MO HealthNet Dental

3

Provider Manual § 13.1 (2011).  Section (19) of the dental manual lists reimbursement codes for services related to dentures and includes an asterisk that states "[c]overable for children under 21 or persons under a category of assistance for pregnant women, the blind or vendor nursing facility residents."  MO HealthNet Dental Provider Manual § 19.1.G(1)-(9) (2011).

The dental manual was updated on or around July 26, 2012.  The July 2012 dental manual includes largely the same language as cited in the November 2011 dental manual except that the July 2012 manual states that dental services *excluding dentures* may be provided to adults – except participants under a category of assistance for pregnant women, the blind, or vendor nursing facility residents – only in the case of traumatic injury or pre-existing medical condition.  MO HealthNet Dental Provider Manual § 13.1 (2011).  The July 2012 manual explicitly states that "[d]entures (full and partial) are not covered under the above noted pre-existing medical condition or trauma criteria."  MO HealthNet Dental Provider Manual § 13.1 (2011).  Section (19), which provides a list reimbursement codes, was not changed in relevant part.  *See* MO HealthNet Dental Provider Manual § 19.1.G(1)-(9) (2012).  The language used in the July 2012 manual, cited above, is incorporated into the current version of the dental manual.

### B.  Amended Complaint Allegations[1]

Plaintiff alleges that, in 2012, the Missouri Department of Social Services (MDSS) published and began following a new dental manual that outlawed all forms of denture services for Missouri adults with limited Medicaid benefits.  Plaintiff alleges that "[n]othing in the November 1, 2011 dental manual excluded dentures for adults with limited Medicaid dental benefits."  Plaintiff states that the new dental manual "materially conflicts" with federal law,

---

[1] After full briefing on Defendants' motion to dismiss the initial complaint, the Court granted Plaintiff's unopposed motion for leave to file an amended complaint in light of the recent Supreme Court decision handed down in *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 191 L. Ed. 2d 471 (2015) as well as Plaintiff's desire to assert additional grounds for relief and address issues raised in Defendants' motion to dismiss.

4

state law, and state regulations. Specifically, Plaintiff alleges that the new dental manual is not authorized under Missouri regulation 13 C.S.R. § 70-35.010(1); that the new dental manual conflicts with 13 C.S.R. § 70-35.010(1) and the 2011 dental manual; that Missouri's plan fails to comply with 42 U.S.C. § 1396a(a)(30)(A); that Missouri's plan, policies, practices, and procedures violate 42 U.S.C. § 1396a(a)(43); and that Missouri's plan fails in various respects with regard to ESPDT services, citing to 42 U.S.C. §§ 1396a(a)(10)(A), 1396a(a)(43), 1396d(a)(xiii)(4)(B), 1396d(r)(3) and 42 C.F.R. § 441.56(e).

Plaintiff alleges Defendant Cindy Lenger informed Plaintiff in early 2013 that Plaintiff could no longer provide denture-related services to Medicaid participants. Plaintiff alleges he responded by informing Defendants that Medicaid participants are legally entitled to denture-related services and that Plaintiff is entitled to reimbursements for the same. According to Plaintiff, Defendants maintained their position of non-coverage and non-reimbursement and instituted an audit of Plaintiff. Plaintiff alleges Defendants thereafter continued to deny Plaintiff's claims for reimbursement of denture-related services and Plaintiff continued to challenge such denials. Plaintiff states that "in direct response to Plaintiff's opposition to Defendants' position, Defendants imposed a sanction on Plaintiff requiring Plaintiff to submit to the pre-payment review process." According to Plaintiff, Plaintiff submits all denture claims to Defendants for pre-payment review and Defendants reject every claim submitted by Plaintiff. Plaintiff alleges further that, in 2013, Defendant Lenger referred Plaintiff to Medicaid Audit and Compliance Unit ("MMAC") investigations, which led to an on-site review where Defendant Lenger told Plaintiff that dentures are not covered for adults with limited benefits. Plaintiff alleges that Defendant Lenger sent Plaintiff a letter on behalf of MMAC stating: "Effective September 1, 2005 dentures were no longer covered for adults with limited benefits. The policy

5

was first published in a Missouri Medicaid provider bulletin dated July 12, 2005." Plaintiff alleges that the July 12, 2005 bulletin does not, in fact, state that dentures are no longer covered for adults with limited benefits. Plaintiff alleges he previously sought relief from Defendants' allegedly unlawful conduct through administrative hearings in April 2014 and November 2014 and through a request for injunctive relief from the court.

Based on the foregoing factual allegations, Plaintiff brings eight claims for relief: (I) declaratory judgment pursuant to 28 U.S.C. § 2201, *et seq.*; (II) declaratory judgment pursuant to Rule 87.02 of the Missouri Rules of Civil Procedure and Mo. Rev. Stat. § 527.010, *et seq.*; (III) Section 1983 claim for violation of Plaintiff's First Amendment right to free speech; (IV) Section 1983 claim for declaratory judgment; (V) equitable estoppel; (VI) prima facie tort; (VII) Section 1983 claim against Cindy Lenger in her individual capacity for violating Plaintiff's constitutional and statutory rights, including Plaintiff's right to free speech; (VIII) Section 1983 claim against Jessica Dresner in her individual capacity for violating Plaintiff's constitutional and statutory rights.

### C. Prior Administrative and State Court Proceedings[2]

On or around July 3, 2013, Plaintiff filed a petition for temporary restraining order, and later an amended petition for judicial review and preliminary injunction, against MDSS and MMAC in the Circuit Court of Cole County, Missouri, challenging the constitutionality of the agency's imposition of the 100% prepayment review process on Plaintiff. Judge Beetem entered judgment against Plaintiff on December 31, 2014, stating that "[t]here is no constitutional right to be able to submit claims without being subject to 100% review" and "the decision to require 100% review is discretionary with Respondent[.]" *See generally Dye v. Mo. Dept. of Soc. Servs.*,

---

[2] The Court takes judicial notice of these prior proceedings in determining Defendants' motion to dismiss. *See Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003).

No. 13AC-CC00408 (Mo. Cir., December 31, 2014). Judge Beetem noted that Plaintiff has a right to prompt payment on clean claims, a remedy should he not be afforded the same, and a right to judicial review of his denied claims. Plaintiff appealed Judge Beetem's decision to the Missouri Court of Appeals for the Western District and Plaintiff's appeal is currently pending.

In December of 2013, Plaintiff and two others (collectively "petitioners") filed an administrative complaint against MDSS and MMAC appealing the denial of reimbursement for 35 denture claims submitted by petitioners. *See generally James Dye, et al. v. Dep't of Soc. Servs., et al.*, No. 13-2108 (Mo. Admin. Hrg. Comm. July 18, 2014). The threshold issue in that case was "the extent to which dentures are a covered service under Missouri's Medicaid program." The Commissioner rejected MMAC's argument that dentures were never a covered service for adults with limited benefits, finding that "nothing in either the regulation or § 19 of the Manual operates as an absolute bar to coverage of dentures for adults with limited benefits." The Commissioner adopted, instead, MMAC's second argument that adults with limited benefits are eligible for denture-related services only insofar as they meet the requirements of 13 C.S.R. § 70-35.010(3)(C) – i.e. the denture claim involves either trauma to the patient or a written referral from a physician stating that the patient has a preexisting medical condition that would be adversely affected in the absence of dental care. Applying that standard, the Commissioner found eight of petitioner's claims were eligible for full or partial reimbursement and the remaining 27 claims were not. Petitioners filed a petition for review of the Commissioner's decision in the Circuit Court of Cole County, Missouri and that petition is currently pending.

On May 28, 2014, Plaintiff and two others (collectively "petitioners") filed a separate administrative complaint against MDSS, MMAC, and MO HealthNet Division, appealing the

7

denial of reimbursement for 23 separate denture claims submitted by petitioners.    The Commissioner noted that:

> The threshold issue in this case is the extent to which dentures are a covered service under Missouri's Medicaid program.  We considered this issue in Case No. 13-2108.  In that case, as in this one, Dye argues that federal Medicaid law mandates that the State of Missouri cover extensive dental services for Medicaid patients.  Dye repeats may of the same arguments that we rejected in the previous case.  We reject them again here, for the same reasons.

*James Dye, et al. v. Dep't of Soc. Servs., et al.*, No. 14-0868 (Mo. Admin. Hrg. Comm. March 19, 2015).  The Commissioner cited Plaintiff's argument that, under 42 C.F.R. § 440.230(b), dental services must be sufficient in amount, duration, and scope in order to reasonably achieve their purpose; however, the Commissioner rejected petitioners' argument that the regulation was violated, noting that the regulation also states "[t]he agency may place appropriate limits on a service based on such criteria as medical necessity or on utilization control procedures" and Missouri provides only "*prescribed medically necessary* dental services."  The Commissioner cited Plaintiff's argument that, under 42 U.S.C. § 1396d(r)(3)(B), dental services must include the relief of pain and infection, restoration of teeth, and maintenance of dental health; the Commissioner rejected that argument, as well, finding the cited regulation relates to dental care for children and is "completely inapposite."  The Commissioner lastly discussed Plaintiff's argument that the Department improperly relied on an unpromulgated rule, i.e. the July 2012 Dental Manual in denying his claims.  The Commissioner agreed that "the Department may define the requirements for Medicaid reimbursement only by published rule" but found "the actions of the Department and its employees are . . . irrelevant to our determination of the ultimate issues in this case, which is whether the claims at issue are properly reimbursable under the law."  The Commissioner assessed petitioners' claims under 13 C.S.R. § 70-35.010(3)(C) and ultimately awarded Plaintiff partial relief in the amount of $713.25.  Plaintiff filed a petition for

review of the Commissioner's decision, which is also currently pending in the Circuit Court of Cole County, Missouri.

## II. STANDARD

"In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). In a facial attack, the court "restricts itself to the face of the pleadings" and "the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Osborn v. United States*, 918 F.2d 724, 729 n. 6 (8th Cir. 1990). Dismissal is appropriate where, accepting the plaintiff's factual allegations as true, the court finds plaintiff has failed to allege an element necessary for subject matter jurisdiction. *Titus*, 4 F.3d at 593. In a factual attack, "the court considers matters outside the pleadings . . . and the non-moving party does not have the benefit of 12(b)(6) safeguards." *Osborn*, 918 F.2d at 729 n. 6. Dismissal is appropriate where, upon weighing the evidence, the court finds plaintiff has failed to prove jurisdiction. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

"To survive a motion to dismiss [under 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is facially plausible where its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The plaintiff must plead facts that show more than a mere speculation or possibility that the defendant acted unlawfully. *Id.* at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court accepts the plaintiff's factual

allegations as true but is not required to do so for mere legal conclusions, *Ashcroft*, 556 U.S. at 678, and the court reads the complaint as a whole rather than each allegation in isolation. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

## III. DISCUSSION

Defendants move to dismiss Plaintiff's Amended Complaint in its entirety, arguing that each count is subject to dismissal for lack of jurisdiction, abstention, and/or failure to state a claim. The Court will analyze Plaintiff's claims in related groups.

### A. Declaratory Judgment Claims

Plaintiff brings three separate counts seeking declaratory judgment that: (1) the November 1, 2011 dental manual is the only manual in compliance with federal and state law and subsequent versions of the manual are contrary to and violate federal and state law; (2) the provision of dentures to adults with limited dental benefits is permitted under the November 1, 2011 dental manual; (3) Defendants are obligated under state and federal law to reimburse Plaintiff for denture-related services provided to qualified Medicaid recipients; and (4) Defendants' policies and procedures with respect to the reimbursement of denture-related claims Plaintiff submitted to Defendants violates federal and state law.

Defendants argue the Court lacks subject matter jurisdiction to hear Plaintiff's declaratory judgment claims because Plaintiff has not alleged any substantive, underlying cause of action or legal right that grants Plaintiff standing to seek the requested relief in federal court. Specifically, Defendants argue the Declaratory Judgment Act, alone, does not confer standing because it does not create any substantive legal rights but merely provides a procedure for enforcing existing legal rights. Defendants argue Plaintiff cannot proceed under the Medicaid Act because Plaintiff has pointed to no "unambiguously conferred right" under any section of the

10

Medicaid Act that allows Plaintiff to enforce its provisions. Moreover, according to Defendants, under *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378 (2015), Plaintiff cannot employ § 1983 or the Supremacy Clause to support his ability as a provider to challenge the State's compliance with the Medicaid Act. As to Plaintiff's Missouri Declaratory Judgement Act claim, Defendants argue Missouri courts have exclusive jurisdiction over such claims. Defendants argue further that the Court should exercise is discretion to abstain from hearing any and all of Plaintiff's declaratory judgment claims under *Burford*. *See generally Heartland Hosp. v. Stangler*, 792 F. Supp. 670, 672 (W.D. Mo. 1992) ("*Burford* abstention is necessary when federal review would likely be 'disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'").

Plaintiff argues the factual allegations in the Amended Complaint are sufficient to meet the standing requirements of injury-in-fact, causation, and redressability and that "dismissal is not warranted simply because Plaintiff has not listed the applicable jurisdictional statute in his Amended Complaint." Plaintiff argues *Armstrong* is "inapposite" because "the Medicaid Act is not the basis of any of the claims contained within Plaintiff's First Amended Complaint" and because *Armstrong* involved a direct claim rather than a § 1983 claim. During oral arguments, Plaintiff stated that his declaratory judgment claims are brought under the Supremacy Clause and that the Eighth Circuit has permitted such claims, citing *Lankford v. Sherman*, 451 F.3d 496 (8th Cir. 2006). Plaintiff's post-hearing supplemental suggestions argue that federal courts clearly have jurisdiction under their "superintending authority" to declare whether federal law preempts conflicting state law; that *Armstrong* does not preclude federal courts from declaring that sections of the Medicaid Act preempt conflicting state laws, regulations, or procedures or from enjoining the enforcement of preempted state law; and that the Amended Complaint pleads

11

violations of sections of the Medicaid Act other than Section 30(A) which may create private rights of enforcement under the Medicaid Act. Plaintiff's post-hearing suggestions further raise due process and improper rulemaking arguments for the first time.

## 1. Declaratory Judgment Act (Count I)

The Declaratory Judgment Act provides that, in "a case of actual controversy" within its jurisdiction, a federal court may issue declaratory relief with regard to the rights and/or legal relations of the parties. 28 U.S.C. § 2201. "The Declaratory Judgment Act [does] not extend federal court jurisdiction beyond the recognized boundaries of justiciability, but only 'enlarge[s] the range of remedies available.'" *Pub. Water Supply Dist. No. 10 of Cass Cnty., Mo. v. City of Peculiar, Mo.*, 345 F.3d 570, 572 (8th Cir. 2003). In other words, the availability of relief under the Declaratory Judgment Act "presupposes the existence of a judicially remediable right." *Schilling v. Rogers*, 363 U.S. 666, 677, 80 S. Ct. 1288, 1296, 4 L. Ed. 2d 1478 (1960). The Act "does not authorize actions to decide whether federal statutes have been or will be violated when no private right of action to enforce the statutes has been created by Congress." *Jones v. Hobbs*, 745 F. Supp. 2d 886, 893 (E.D. Ark. 2010) *aff'd sub nom. Williams v. Hobbs*, 658 F.3d 842 (8th Cir. 2011). Here, Defendants argue Plaintiff's claim brought under the Declaratory Judgment Act, 42 U.S.C. § 2201, *et seq.*, fails because it is not based on any underlying cause of action or legal right.

Plaintiff argues that he brings his claims under the Supremacy Clause. As the Supreme Court recently held, however, the Supremacy Clause does not create a cause of action and is not the source of any federal rights. *Armstrong v. Exceptional Child Ctr.*, Inc., 135 S. Ct. 1378, 1383, 191 L. Ed. 2d 471 (2015). The Supreme Court also held that there is no implied right of action contained in the Supremacy Clause. *Id.* at 1384. Accordingly, the Supremacy Clause

12

does not provide Plaintiff a basis upon which Plaintiff can maintain his Declaratory Judgment Act claim.

Plaintiff further argues that he brings his claims in equity based upon the superintending authority of federal courts to declare whether federal law preempts conflicting state law. As the Supreme Court recently discussed, however, "[c]ourts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law." *Id.* at 1385. Thus, where a federal statute implicitly precludes private enforcement of a statutory provision, a plaintiff cannot invoke the court's equitable powers to circumvent Congress's exclusion of private enforcement. *See id.* The Supreme Court held in *Armstrong*, issued earlier this year, that "the Medicaid Act implicitly precludes private enforcement of § 30(A), and respondents cannot, by invoking our equitable powers, circumvent Congress's exclusion of private enforcement." *Id.* The Court found two aspects of Section 30(A) established Congress's intent to preclude private enforcement of that section and thereby foreclosed equitable relief – (1) the express provision in 42 U.S.C. § 1396c providing an administrative remedy for a state's failure to comply with Medicaid requirements, i.e. the Secretary's withholding of Medicaid funds; and (2) the broad and judicially unadministrable nature of Section 30(A)'s text. *Id.* To the extent Plaintiff brings his Declaratory Judgment Act claims under Section 30(A), then, Plaintiff's claims must fail.

Plaintiff further argues that he has pleaded violations of other sections of the Medicaid Act, besides Section 30(A), that may create private rights of enforcement. The Amended Complaint, for example, cites a violation of 42 U.S.C. § 1396a(a)(43). That section, however, pertains to health screening, diagnostics, and treatment services for persons under age 21; it does not concern the factual allegations in Plaintiff's Amended Complaint, which relate to denture-related coverage and reimbursement for adults with limited benefits. The same can be said for

13

Plaintiff's citations to statutory sections and regulations related to "EPSDT services." Plaintiff argues in his supplemental suggestions that "Plaintiff can plead other specific violations of the Act if necessary with which Missouri's dental plan conflicts" including 42 U.S.C. § 1396a(a)(1), (8), (19), (34), (37), and (72) and "Plaintiff would seek leave to plead these specific facts and claims."

In the interests of justice, the Court will grant Plaintiff one final opportunity to amend his Declaratory Judgment Act claim. The Court agrees with Defendants that Plaintiff has exhibited a tendency to expand and/or change his legal theories throughout the course of this litigation and the Court is hesitant to grant leave where, as here, Plaintiff continuously attempts to morph his claims in response to opposing counsel's legal arguments and the Court's questioning. The Court will allow Plaintiff one final opportunity to amend his Declaratory Judgment Act claim. In granting Plaintiff leave to amend, the Court is not ruling on the merits of Plaintiff's suggested changes and Defendants are free to file another motion to dismiss Plaintiff's Declaratory Judgment Act claim if they deem such action appropriate.[3]

## 2. Missouri Declaratory Judgment Act (Count II)

The Missouri Declaratory Judgment Act provides a procedural remedy rather than a substantive right and federal courts have held that it is improper to invoke the Missouri Declaratory Judgment Act, as opposed to the Federal Declaratory Judgment Act, in federal court. *See, e.g., W. Heritage Ins. Co. v. Love*, 24 F. Supp. 3d 866, 875 (W.D. Mo. 2014) *aff'd sub nom. W. Heritage Ins. Co. v. Asphalt Wizards,* 795 F.3d 832 (8th Cir. 2015); *Timber Point Properties III, LLC v. Bank of Am., N.A.*, No. 13-CV-03449-S-DGK, 2014 WL 2584825, at *5 (W.D. Mo. June 10, 2014); *City of Jefferson v. Cingular Wireless, LLC,* No. 04-4099-CVC-C-NKL, 2007

---

[3] The Court defers ruling on any abstention argument under *Burford* or *Younger* at this time.

WL 1965572, at *7 (W.D. Mo. July 3, 2007) *aff'd sub nom. City of Jefferson City, Mo. v. Cingular Wireless, LLC*, 531 F.3d 595 (8th Cir. 2008).

Defendants argue that Missouri courts have exclusive jurisdiction over claims brought under the Missouri Declaratory Judgment Act, Mo. Rev. Stat. §§ 527.010 *et seq.* and Plaintiff submits no counter-argument. Upon review, the Court agrees with Defendants that Plaintiff's claims brought under the Missouri Declaratory Judgment Act are not appropriate in this federal case. Accordingly, Count II is hereby **DISMISSED**.

### 3. 42 U.S.C. § 1983 (Count IV)

Section 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. "In order to seek redress through § 1983 . . . a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." *Blessing v. Freestone*, 520 U.S. 329, 340, 117 S. Ct. 1353, 1359, 137 L. Ed. 2d 569 (1997) (emphasis in original). To determine whether a statutory provision gives rise to a federal right, courts look to the three-part *Blessing* test: "(1) Congress intended the statutory provision to benefit the plaintiff; (2) the asserted right is not so 'vague and amorphous' that its enforcement would strain judicial competence; and (3) the provision clearly imposes a mandatory obligation upon the states." *Lankford v. Sherman*, 451 F.3d 496, 508 (8th Cir. 2006). Under the first prong, nothing short of an "unambiguously conferred right" will support a Section 1983 claim. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283, 122 S. Ct. 2268, 2275, 153 L. Ed. 2d 309 (2002). If a plaintiff satisfies all three parts of the *Blessing* test, then the statutory provision is presumptively enforceable under Section 1983; however, defendants can rebut the presumption "by showing either that Congress explicitly foreclosed a remedy under § 1983 or implicitly did so, 'by creating a comprehensive

15

enforcement scheme that is incompatible with individual enforcement.'" *Midwest Foster Care & Adoption Ass'n v. Kincade*, 712 F.3d 1190, 1195-96 (8th Cir. 2013).

Defendants argue Plaintiff's claim for declaratory relief under Section 1983 must fail in light of the Supreme Court's discussion in *Armstrong*[4] and because Plaintiff, a provider, has failed to identify any "unambiguously conferred right" allowing Plaintiff to enforce any provision of the Medicaid Act. At oral argument, Plaintiff voluntarily abandoned his Count IV claim for declaratory judgment under Section 1983. Because Plaintiff has failed to demonstrate that one or more federal statutes "creates an individually enforceable right in the class of beneficiaries to which he belongs[,]" Plaintiff cannot sustain his Section 1983 claim. *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 120, 125 S. Ct. 1453, 1458, 161 L. Ed. 2d 316 (2005). Accordingly, Count IV is hereby **DISMISSED**.

---

[4] In *Armstrong*, the Court discussed in *dicta* whether plaintiff, a provider, had a possible cause of action under the Medicaid Act itself. 135 S. Ct. 1378, 1387 (2015). The Court stated that:

> Section 30(A) lacks the sort of rights-creating language needed to imply a private right of action. It is phrased as a directive to the federal agency charged with approving state Medicaid plans, not as a conferral of the right to sue upon the beneficiaries of the State's decision to participate in Medicaid. The Act says that the "Secretary shall approve any plan which fulfills the conditions specified in subsection (a)," the subsection that includes § 30(A). 42 U.S.C. § 1396a(b). We have held that such language "reveals no congressional intent to create a private right of action." And again, the explicitly conferred means of enforcing compliance with § 30(A) by the Secretary's withholding funding, § 1396c, suggests that other means of enforcement are precluded[.]

> Spending Clause legislation like Medicaid "is much in the nature of a contract." The notion that respondents have a right to sue derives, perhaps, from the fact that they are beneficiaries of the federal-state Medicaid agreement, and that intended beneficiaries, in modern times at least, can sue to enforce the obligations of private contracting parties. We doubt, to begin with, that providers are intended beneficiaries (as opposed to mere incidental beneficiaries) of the Medicaid agreement, which was concluded for the benefit of the infirm whom the providers were to serve, rather than for the benefit of the providers themselves. More fundamentally, however, the modern jurisprudence permitting intended beneficiaries to sue does not generally apply to contracts between a private party and the government . . . much less to contracts between two governments. Our precedents establish that a private right of action under federal law is not created by mere implication, but must be "unambiguously conferred[.]" Nothing in the Medicaid Act suggests that Congress meant to change that for the commitments made under § 30(A).

*Id.* at 1387-88 (internal citations omitted).

**B. Free Speech Retaliation Claims Under 42 U.S.C. § 1983**

Plaintiff alleges Defendants retaliated against Plaintiff for speaking out against Defendants' allegedly unlawful Medicaid reimbursement policies. Plaintiff alleges Defendants retaliated against Plaintiff by instituting 100% prepayment review of all of Plaintiff's claims; by failing or refusing to file denture claims mailed in by Plaintiff; by failing/refusing to timely process Plaintiff's denture claims; by denying Plaintiff's denture claims; by auditing Plaintiff and his former employees with little to no advance notice; and by suspending Plaintiff's provider number. Plaintiff seeks injunctive relief barring Defendants from retaliating against Plaintiff for exercising Plaintiff's right to challenge Defendants' activities and procedures, barring Defendants from sanctioning or limiting Plaintiffs' ability to participate as a Title XIX provider, and barring Defendants from implementing the new dental manual. Plaintiff requests damages, costs, and expenses in his individual capacity claims.

Defendants argue Plaintiff fails to state a claim under Section 1983 because he fails to plead sufficient facts to satisfy the First Amendment retaliation standard articulated in *Osborne v. Grussing*, 477 F.3d 1002, 1006 (8th Cir. 2007). Defendants further argue they are entitled to qualified immunity on Plaintiff's individual capacity claims.

**1. Official Capacity (Count III)**

To establish First Amendment retaliation under Section 1983, a plaintiff must show that: "(1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Peterson v. Kopp*, 754 F.3d 594, 602 (8th Cir. 2014). In a regulatory enforcement situation, the Government has an even stronger interest in "not putting the violator 'in a better position as a

17

result of the exercise of constitutionally protected conduct[.]'" *Osborne v. Grussing*, 477 F.3d 1002, 1006 (8th Cir. 2007). Accordingly:

> [A] plaintiff who seeks relief from valid adverse regulatory action on the ground that it was unconstitutional retaliation for First Amendment-protected speech must make the same showing that is required to establish a claim of selective prosecution – "that he has been singled out for prosecution while others similarly situated have not been prosecuted for conduct similar to that for which he was prosecuted [and] that the government's discriminatory selection of him for prosecution was based upon ... his exercise of his first amendment right to free speech. *United States v. Catlett*, 584 F.2d 864, 866 (8th Cir.1978), citing *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir.1974).

*Id.*

Here, the Court agrees with Defendants that Plaintiff's First Amendment retaliation claim as pleaded fails to state a claim upon which relief can be granted. The Amended Complaint alleges no facts or averments that show Plaintiff was singled out for prosecution while others who were similarly situated were not. The Amended Complaint further lacks sufficient factual allegations, as opposed to mere conclusory statements, indicating Defendants' allegedly discriminatory actions were "based upon" Plaintiff's speech as opposed to something else, such as a perceived rules violations. *See, e.g., Daywitt v. Minnesota*, No. CIV. 14-4526 MJD/LIB, 2015 WL 4094199, at *6 (D. Minn. July 6, 2015) (dismissing First Amendment retaliation claim arising from "pure enforcement" of an allegedly unconstitutional policy because plaintiff failed to plead facts indicating the adverse action was motivated, at least in part, by the protected activity). Accordingly, Plaintiff's Count III fails to state a claim upon which relief can be granted.

Within Plaintiff's supplemental suggestions, Plaintiff argues Defendants took certain adverse regulatory actions against Plaintiff that they did not take against other dentists. Plaintiff states that, if the Court finds the allegations in the Amended Complaint insufficient to state a

18

claim, then Plaintiff requests leave to amend "to make specific allegations concerning selective enforcement of the dental regulations against Dr. Dye as compared to other dentists who are getting paid for denture claims with certificates of medical necessity completely defective under the standards MMAC is applying to Dr. Dye."

## 2. Individual Capacity – Cindy Lenger (Count VII) & Jessica Dresner (Count VIII)

Defendants argue Plaintiff's individual capacity claims should further be dismissed under the doctrine of qualified immunity. "Qualified immunity shields government officials from liability in their individual capacity so long as the official has not violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010). "To overcome the defense of qualified immunity the plaintiff must show: '(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation.'" *Id.* (quoting *Howard v. Kansas City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009)).

At this time, Plaintiff has failed to plead sufficient facts to overcome Defendants' qualified immunity. As discussed above, Plaintiff has failed to present sufficient facts to demonstrate the deprivation of a clearly established constitutional or statutory right. Plaintiff failed to plead that Plaintiff received disparate treatment as compared to other similarly situated dentists; he failed to present sufficient factual allegations to infer that Defendants took the alleged adverse actions based on Plaintiff's protected speech; and he failed to present more than conclusory statements to show that Defendants knew or should have known they violated a clearly established right by employing sanctions that Plaintiff does not dispute were within their discretion to employ in appropriate circumstances. The Court further notes that the Amended

19

Complaint lacks any factual allegations tying Defendant Dresner to the alleged retaliatory conduct. *See generally Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) ("'Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.' . . . Thus, 'each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.'"). Accordingly, Plaintiff's Counts VII and VIII fail to state a claim.

Again, Plaintiff requests leave to file additional facts to support his claims. Plaintiff seeks to add additional "unconscionable ways" in which the individual defendants allegedly violated Plaintiff's clearly established rights – i.e. performing an audit and never reducing its results to writing, intentionally mailing claim checks to the wrong address, falsifying information in a request for sanctions, etc.

In the interests of justice, the Court will grant Plaintiff's request for leave in order to allow Plaintiff one final opportunity to amend his Free Speech Retaliation claims brought under 42 U.S.C. § 1983. In granting Plaintiff leave to amend, the Court is not ruling on the merits of Plaintiff's suggested changes and Defendants are free to file another motion to dismiss Plaintiff's Declaratory Judgment Act claim if they deem such action appropriate.[5]

### C. Equitable Estoppel (Count V)

Plaintiff's equitable estoppel claim alleges the Missouri Medicaid Plan represented to Plaintiff that he would be reimbursed for denture-related services, that the Plan induced Plaintiff to provide denture-related services, that the State of Missouri intended to induce Plaintiff to act on the alleged misrepresentation, and that Plaintiff relied on Defendants' misrepresentation to his detriment.

---

[5] The Court defers ruling on any abstention argument under *Burford* or *Younger* at this time and Defendants are free to re-raise their arguments based on immunity if they deem such action appropriate.

Although Plaintiff is correct that equitable estoppel can sometimes be used against governmental bodies, the general rule is that the doctrine of equitable estoppel is not applicable to governmental bodies and a deviation is only appropriate in "exceptional circumstances" where "manifest injustice would result" from a refusal to apply the doctrine. *Armer v. City of Salem*, 861 F.2d 514, 516 (8th Cir. 1988). Moreover, Defendant is correct that Missouri courts have held equitable estoppel is a doctrine rather than a cause of action and is generally not intended to be used as a sword. *See Dow Chem. Co. v. G.S. Robins & Co.*, No. 4:06-CV-739 CAS, 2006 WL 3511494, at *4 (E.D. Mo. Dec. 5, 2006) (dismissing equitable estoppel claim for failure to state a claim because "[t]he general rule is that an estoppel does not itself give a cause of action"); *Guzzardo v. City Grp., Inc.,* 910 S.W.2d 314, 317 (Mo. Ct. App. 1995) (affirming dismissal for failure to state a claim finding equitable estoppel was not available to create claim on behalf of landowner seeking declaratory judgment finding adjoining landowner obligated to maintain party wall); *Miskimen v. Kansas City Star Co.*, 684 S.W.2d 394, 400 (Mo. Ct. App. 1984) ("An equitable estoppel cannot arise unless justice demands it; it cannot be used as a sword to create or work a positive gain for the claimant but can only act as a shield to protect him from a loss which he could not otherwise escape."); *Hill v. McDonald's Corp.*, 709 S.W.2d 169, 171 (Mo. Ct. App. 1986) (quoting *Shaffer v. Hines*, 573 S.W.2d 420 (Mo. App. 1978) ("This doctrine is often referred to as a shield against fraud. It is not, however, available for use as a sword. It cannot be used to create a cause of action, if the action did not otherwise exist. Its purpose is not to bring about a gain but to protect from loss.").

Plaintiff has presented no unique circumstances in this case that warrant deviation from the general rules. The Court finds an equitable estoppel claim inappropriate under the facts and arguments presented. Accordingly, Plaintiff's Count V is **DISMISSED**.

### D. Prima Facie Tort (Count VI)

Plaintiff alleges Defendant Lenger engaged in a number of intentional acts towards Plaintiff that Defendant Lenger contends were lawful, including denying Plaintiff's denture claims, imposing 100% review, and scheduling an audit with less than 24 hours' notice. Plaintiff alleges Defendant Lenger committed these acts with the express intent to injure Plaintiff or to put Plaintiff out of business and, as a direct and proximate result of Lenger's actions, Plaintiff was forced to close dental offices and suffer injury to his reputation. Plaintiff alleges there was insufficient justification for Defendant Lenger's actions. Defendants argue Plaintiff's prima facie tort allegations fail to state a claim upon which relief can be granted.

"The elements of a prima facie tort claim are: (1) an intentional lawful act by defendant; (2) defendant's intent to injure the plaintiff; (3) injury to the plaintiff; and (4) an absence of or insufficient justification for defendant's act." *Nazeri v. Missouri Valley Coll.*, 860 S.W.2d 303, 315 (Mo. 1993). It appears Plaintiff had pleaded all of the required elements to state a prima facie tort case of action; however, Defendants argue that under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), Plaintiff's allegations are insufficient because Plaintiff failed to plead facts, as opposed to mere legal conclusions or conclusory statements, to establish that Defendants intended to injure Plaintiff. The Court finds merit to Defendants' argument and the Court will allow Plaintiff leave to amend Count VI in order to supplement factual allegations to support the conclusory statements related to the intent alleged in Count VI.

### IV. CONCLUSION

For the reasons discussed above, the Court hereby **GRANTS IN PART AND DENIES IN PART** Defendants' motion to dismiss (Doc. 29). The Court grants Defendants' motion as to Counts II, IV, and V and hereby **DISMISSES** Counts II, IV, and V of the Amended Complaint.

The Court finds Counts I, III, VI, VII, and VIII of the Amended Complaint are deficient as currently pleaded but the Court will allow Plaintiff one final opportunity to **AMEND** those counts, per Plaintiff's request, if Plaintiff desires to do so. Plaintiff is not granted leave to amend any other count or add any other count to his Second Amended Complaint. *See generally Julianello v. K-V Pharm. Co.*, 791 F.3d 915, 922 (8th Cir. 2015) ("[P]arties should not be allowed to amend their complaint without showing how the complaint could be amended to save the meritless claim.").

The Court notes that it does not address futility of Plaintiff's suggested amendments at this time, as Plaintiff has not provided a proposed Second Amended Complaint such that Defendant could raise a futility argument and the parties have not yet briefed any of the issues presented by Plaintiff's suggested amendments. Plaintiff shall file any Second Amended Complaint within fourteen (14) days of the date of this order. If Plaintiff fails to file a Second Amended Complaint by that deadline, the Court will dismiss Plaintiff's remaining claims and close the case without further notice.

**IT IS SO ORDERED**:
Date: November 19, 2015                    _/s/ Douglas Harpool_____
                                           **DOUGLAS HARPOOL**
                                           **UNITED STATES DISTRICT JUDGE**